IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CURTIS LEE, | |
| --- | --- |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 18-05332 |
| CITY OF PHILADELPHIA, *et al.*, | |
| *Defendants.* | |

**PAPPERT, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　June 27, 2019

### MEMORANDUM

　　Curtis Lee sued the City of Philadelphia, the Philadelphia Police Department, Commissioner Richard Ross, and ten Philadelphia Police Officers for violating his rights under 42 U.S.C. § 1983, the United States Constitution and Pennsylvania state law. Defendants move for judgment on the pleadings for many of the claims against them.

　　The Complaint is an abject mess—an 18 count, 36 page amalgam of duplicative, conclusory, overbroad, vague and in part legally frivolous allegations against individuals and entities whose role in the harm Lee alleges is far from clear. As an initial matter, Counts X, XI, XV, XVI, and XVII are repetitive of, or encompassed in, the allegations in Counts I, II, V and VI and the former five counts are all dismissed with prejudice. Second, while the Philadelphia Police Department is listed as a Defendant in the case's caption, the Complaint contains no discernible allegations against the Department. Even if it did, such allegations would be dismissed because the Department cannot be sued separately from the City itself. To the extent Lee seeks

1

redress from the Police Department, any such claims are also dismissed with prejudice. Finally, Lee also sues the individual defendants in their official capacities (Counts VII, VIII, IX, XI, XII). Since "official capacity suits" are merely another way of pleading an action against an entity of which an officer is an agent, all purported claims against individual defendants in their official capacities are redundant and are dismissed with prejudice.

The Court grants in part and denies in part the rest of Defendants' Motion, but will allow Lee an opportunity to amend his Complaint, consistent with this Memorandum. In an effort to bring a semblance of coherence to the Memorandum, rather than take the claims in the disjointed order alleged in the Complaint, the Court addresses all federal claims first followed by claims brought pursuant to Pennsylvania law.

I

On June 2, 2016, Lee was outside a church's soup kitchen on the corner of Allegheny Avenue and Weymouth Street in Philadelphia when Officer Donald Vandermay arrested him as part of an undercover drug sting. (Compl. ¶¶ 8, 10, 18.) Lee contends that Vandermay violently threw him to the ground before throwing him into a police vehicle, with force that was "intentional, unnecessary, unjustified, excessive, reckless, willful, and malicious." (*Id*. at ¶¶ 18, 20.) Lee alleges that nine other officers were present and witnessed what Vandermay "did to [Lee] and failed to stop Vandermay from beating [him]." (*Id*. at ¶ 21.) As a result of this incident, Lee suffered serious and permanent injuries. (*Id*. at ¶ 18.)

On June 8, 2017, Lee was convicted of manufacturing, delivery or possession with intent to manufacture or deliver, conspiracy and intentional possession of a controlled substance. *See* (Mot. Ex. 1, ("Criminal Docket"), at 4, ECF No. 20-1; Resp. Opp'n Mot. Ex. I, ("Trial Transcript"), at 31:20–24, ECF No. 23-2).[1] Lee filed a PCRA petition on March 25, 2019, seeking to overturn his conviction. *See* (Resp. Opp'n Mot. at 2).

II

A motion for judgment on the pleadings is a procedural hybrid of a motion to dismiss and a motion for summary judgment. Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings will be granted only if "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 220 (3d Cir. 2005) (citing *Society Hill Civic Association v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)). The court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* In other words, a

---

[1] In deciding a motion for judgment on the pleadings, a court may consider: 1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint, even if they are not attached thereto, without converting the motion into one for summary judgment. *Love v. Thompson*, 2017 WL 2720285, at *2 (W.D. Pa. June 23, 2017) (citing *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004)). A court may also consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion [for judgment on the pleadings] if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, Lee attaches several exhibits to his response to the Motion for Judgment on the Pleadings, one of which is a copy of the trial transcript from Lee's state court proceedings. The Court may consider the trial transcript at this stage because Lee explicitly relies upon it in his Complaint and it is an undisputedly authentic document and a matter of public record. Defendants attach as an exhibit to their Motion Lee's Criminal Docket, which the Court may also consider as a matter of public record.

3

district court applies the same standard to a judgment on the pleadings as a motion to dismiss pursuant to Rule 12(b)(6). *See Snyder v. Daugherty*, 899 F. Supp. 2d 391, 400 (W.D. Pa. 2012).

III

To establish a *prima facie* case under § 1983, Lee must first demonstrate that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Lee must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

A

Lee asserts Fourth Amendment claims for malicious prosecution, false arrest, and false imprisonment (Counts II, V, VI, VII, XI, XIII, XIV, XVI). The claims are not cognizable, however, under the favorable termination rule articulated by the Supreme Court of the United States in *Heck v. Humphrey*, 512 U.S. 477 (1994).[2] In *Heck*, the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

---

[2] Lee filed two Motions to Stay these claims until after resolution of his PCRA. *See* (ECF Nos. 6 and 19). The Court denied the Motions, finding that a stay was not warranted because the PCRA was filed after Lee's conviction. *See* (ECF Nos. 10 and 28).

4

> authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486–487. The Third Circuit Court of Appeals has interpreted *Heck* to mean that "a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." *Gilles v. Davis*, 427 F.3d 197, 208–09 (3d Cir. 2005). District courts must undertake a fact-intensive inquiry for each claim raised by the plaintiff and determine whether success on that claim would necessarily impugn the integrity of the plaintiff's criminal conviction. *See Gibson v. Superintendent, N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 447-50 (3d Cir. 2005) (holding that a determination whether *Heck* applies to a Fourth Amendment claim requires a case-by-case fact-based inquiry).

Malicious prosecution claims necessarily impugn the integrity of the underlying criminal convictions. Accordingly, Lee's claims for malicious prosecution are barred and dismissed without prejudice. *See Olick v. Pennsylvania*, 739 F. App'x 722, 726 n.4 (3d Cir. 2018) (dismissing malicious prosecution claim without prejudice because it was barred by *Heck*).

*Heck* does not automatically bar Lee's claims for false arrest and false imprisonment. *See id.* at 726. Specifically, *Heck* does not bar such claims where there is "independent evidence upon which a conviction could be obtained that was not in any way tainted by the unlawful arrest." *Covington v. City of New York*, 171 F.3d 117, 123 (2d Cir. 1999); *Heck*, 512 U.S. at 487 n.7 ("Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful."). "On the other hand, in a case where the only evidence for conviction was obtained

5

pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence." *Gibson*, 411 F.3d at 452 (citing *Covington*, 171 F.3d at 123); s*ee also Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 640–41 (E.D. Pa. 2014) (barring a plaintiff's Fourth Amendment claims under *Heck* because the only evidence supporting the charges was acquired as a result of the alleged unlawful search and false arrest of the plaintiff).

Here, following a bench trial Lee was found guilty of manufacturing, delivery or possession with intent to manufacture or deliver, conspiracy and intentional possession of a controlled substance. *See* (Criminal Docket at 4; Trial Transcript 31:20–24). The evidence obtained during Lee's arrest is the only connection between Lee and the drug offenses for which he was convicted. During his trial, the government presented evidence that Lee was the lookout for the drug conspiracy. (Compl. ¶¶ 24, 28.) Officer Killman testified that when the Officers arrested Lee, they recovered $98, which they found in a property receipt. (Trial Transcript 17:19–25.) Officer Killman also testified that he observed Lee yell "police" whenever a marked police car came down the street. (*Id*. at 21:16–18.) Lee denies all allegations and maintains that he did not participate in the drug conspiracy and that the officers lacked probable cause to arrest him. (Compl. ¶¶ 24, 25.)

Because the only evidence supporting Lee's convictions was obtained pursuant to his arrest, recovery in this case on his false arrest and false imprisonment claims would necessarily impugn those convictions. *See Gibson*, 411 F.3d at 452 (citing *Covington*, 171 F.3d at 123); *see also Ellington v. Cortes*, 532 Fed. App'x 53, 56–57 (3d Cir. 2013). Lee is in practice attempting to collaterally attack his conviction through these § 1983

6

claims, which is precisely what *Heck* forbids. *See James v. York County Police Dep't*, 160 Fed. App'x 126, 133–34 (3d Cir. 2005). Accordingly, Lee's claims for false arrest and false imprisonment are dismissed without prejudice. *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (finding that dismissal of § 1983 claims on *Heck* grounds warrants only dismissal without prejudice).[3]

B

The court interprets Lee's allegations against Officers Killman, Hunter, Rebstock, Sulock, Schweizer, Maminski, Hamoy and Ryan, and Sgt. Woods (Counts I and II) as failure to intervene claims under § 1983. A police officer has a duty to "take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). A police officer is liable for failure to intervene under § 1983 if the plaintiff demonstrates that: (1) the officer had reason to know that excessive force was being used; and (2) the officer had a realistic opportunity to intervene. *See id.* The inquiry is therefore whether the officer was in a position to see the violation and had a reasonable amount of time to intervene. *Hartman v. Gloucester Twp.*, 2014 WL 2773581, at *14 (D.N.J. June 19, 2014) (citing *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986) (instructing the district court upon remand to determine whether the officer was in a position to intervene)).

Here, Officers Killman, Hunter, Rebstock, Sulock, Schweizer, Maminski, Hamoy and Ryan, and Sgt. Woods move for judgment on the pleadings on the basis that Lee's

---

[3] Lee appears to bring state law claims for malicious prosecution and false arrest (Count IV). Those claims are also dismissed without prejudice as the analysis under *Heck* is the same for claims under state law and § 1983. *See Rosembert*, 14 F. Supp. 3d at 644 n.16.

7

allegations against them are generalized and lack sufficient specificity. *See* (Mot. at 7–8). However, Lee alleges that they all were present at the time of the assault and "witnessed what Defendant, Vandermay, did to the plaintiff and failed to stop Vandermay from beating the plaintiff." (Compl. ¶ 21.) Lee asserts that "[e]ach of the Police Officer Defendants had the opportunity to prevent and/or stop the . . . use of force against the plaintiff and the unlawful arrest made by Defendant, Vandermay, in full sight of Defendant, Killman, but they chose not do so." (*Id*. at ¶ 29.) Accordingly, Lee has alleged sufficient facts to state a claim against them for failing to intervene during Lee's alleged assault.

C

Lee's claims against the City of Philadelphia (Counts I, II, V, VI, IX, XV, XVII, XVIII) are analyzed under the standard for municipal liability set forth in *Monell v. Dep't of Social Servs*, 436 U.S. 658 (1978). Generally, a municipality will not be held liable under the doctrine of *respondeat superior* for the misconduct of its employees. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, a municipality can only be liable under § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. at 658).

A policy "is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480 (citation and quotation omitted). A custom must be established "by showing that a given course of conduct, although not specifically

8

endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007) (emphasis added). "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." *Id.* (citations and quotation omitted).

Accordingly, a successful *Monell* claim against the City must establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the City and (3) that the constitutional violation was caused by the City's policy or custom. Conclusory and general claims that simply paraphrase § 1983 will not satisfy federal pleading requirements because they "fail[ ] to satisfy the 'rigorous standards of culpability and causation' required to state a claim for municipal liability." *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) (quoting *McTernan v. City of York, PA*, 564 F.3d 636, 658–59 (3d Cir. 2009)).

1

Lee's primary theory against the City is that the City has a policy "to condone use of excessive force" and "a policy to condone false arrest and malicious prosecution." (Compl. ¶¶ 143, 156.) Lee also contends, *inter alia*, that the City has a:

- policy to "disregard, ignore and/or overlook protocols, rules and regulations, requiring the write-up, suspension and/or firing of Defendant, Vandermay," (*id.* at ¶ 98);
- policy to "inadequately investigate and/or report excessive force, false arrest, false imprisonment, malicious prosecutions and police violence with and/or to protect other persons, including the plaintiff, from known violent officers," (*id.* at ¶ 114);
- policy and/or custom "to improperly and inadequately supervise and train its/their police officers," (*id.* at ¶ 115);
- policy to "ignore exculpatory evidence, to fail to investigate and to fail to punish officers who participated in improper and malicious

9

- prosecutions and/or false arrests and used excessive force," (*id.* at ¶ 116);
- policy "to tolerate racial, ethnic and disability discriminatory motives by Police Officers in making stops, arrests and in using excessive force," (*id.* at ¶ 117);
- policy "to utilize inadequate hiring standards and procedures," (*id.* at ¶ 118);
- "recognized and accepted customs condoning and encouraging police brutality, malicious prosecutions and/or false arrests and/or false imprisonments," (*id.* at ¶ 143);

Such conclusory allegations are insufficient to state a claim. A *Monell* "cause of action must stand on more than mere conclusory statements and threadbare recitations of the elements of his claim." *Cortese v. Sabatino*, No. CV 18-3804, 2019 WL 1227842, at *4 (E.D. Pa. Mar. 15, 2019). Lee provides no factual support for any of these alleged policies. A "[p]laintiff cannot extrapolate from an isolated occurrence with those Officers, without more, to allege that their conduct evidenced a larger policy or custom endorsed by the City and Ross." *Id.*

2

Lee also alleges a number of "failure to train" claims against the City. Failure to train claims "are generally considered a subcategory of policy or practice liability." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To state a claim against a municipal entity for failure to train, the complaint must allege facts establishing that the municipality's failure to train "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees]

come into contact.'" *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)). In rare cases, deliberate indifference can be shown if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can be reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

Lee again makes numerous conclusory allegations without any factual support. He asserts that the "City of Philadelphia and Ross, at all times relevant hereto, with deliberate indifference failed to properly train and supervise officers[.]" (Compl. ¶ 156.) Lee asserts that the City "fail[ed] to train police officers in proper methods, techniques, procedures and protocols for obtaining compliance and in restraining persons in a manner to protect the other persons, including the plaintiff, from violence and/or injury." (*Id.* at ¶ 98.) Specifically, Lee contends that the City knew that Vandermay had a "long history of excessive force" yet they failed to "take him off the street, let alone the police force, or otherwise sanction and/or re-train him." (*Id.* at ¶ 32.) Lee also argues that "[t]he City of Philadelphia, Ross and/or Philadelphia Police Department did not require appropriate in-service training or re-training of Police Officers and/or other persons, including Defendants Vandermay and Killman, who were known to have engaged in professional misconduct." (*Id.* at ¶ 115.)

11

Lee's assertions are insufficient to hold the City liable under *Monell*. Lee fails to provide any factual support for his numerous assertions that the City failed to train its employees, including Vandermay. Moreover, other than conclusorily stating that Vandermay had a long history of excessive force, Lee does not identify any previous instances of excessive force that could have demonstrated the City's deliberate indifference.

3

Lee also brings a § 1983 claim for failure to provide adequate medical care against the City (Count XVIII). However, Lee makes no allegations that his failure to receive adequate medical care resulted from the implementation or execution of an officially adopted policy or informally adopted custom. *See Beck*, 89 F.3d at 971. Instead, Lee's theory for liability is based in state law negligence. Lee contends that the City of Philadelphia "negligently continued to contract with, Corizon, to provide said medical services to the inmates of the Philadelphia Prison system, despite having knowledge and notice that the medical treatment provided by Corizon . . . was often substandard, untimely, inadequate, substandard, negligent, careless, reckless and unsafe." (Compl. ¶ 163.) Lee also argues that the City "negligently, carelessly, recklessly, intentionally, and with deliberate indifference disregarded its duty to provide the Plaintiff, Curtis Lee, and other similarly situated, with proper and timely medical care." (*Id*. at ¶ 162.) Because Lee has not properly stated a *Monell* claim, the Court dismisses the claim against the City.

D

Lee also seeks to hold Commissioner Ross liable under a supervisory theory of liability (Counts I, II, III, VI, IX, XV, XVI, XVII, XVIII). The Third Circuit has explained that a supervisor can be held liable under § 1983 by showing either (1) a supervisor's personal direction or actual knowledge and acquiescence in a constitutional violation, *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); or (2) that a defendant, in his role as policymaker, acted with deliberate indifference in establishing a policy that directly caused the alleged constitutional violation. *Brown v. May*, No. 16- 01873, 2017 WL 2178122, at *2 (E.D. Pa. May 17, 2017).

Lee does not allege that Ross personally directed or had actual knowledge and acquiesced in Vandermay's use of excessive force. Indeed, Lee pleads that Ross was not present on the day of his arrest. *See* (Compl. ¶ 13). Lee instead seeks to hold Ross liable under the deliberate indifference theory. However, Lee's allegations against Ross are the exact same as his allegations against the City. Here too, Lee has failed to plead with sufficient specificity and factual support a policy that directly caused the alleged constitutional violations. The Court therefore dismisses claims against Ross for the same reasons discussed above, *see supra* Section III.C.

IV

A

Lee brings tort actions against the City for assault, battery, negligence and intentional infliction of emotional distress (Counts III, XII, XVIII). The Tort Claims Act states that "except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any

13

act of the local agency or an employee therefore or any other person." 42 Pa. Cons. Stat. § 8541. The statute immunizes local agencies, including municipalities, from tort liability. *See, e.g.*, *Lory v. City of Phila.*, 544 Pa. 38, 674 A.2d 673, 675 (Pa. 1996) ("The Tort Claims Act . . . renders the city immune from claims based on willful or malicious conduct.").

Although section 8542(b) of the Tort Claims Act creates a narrow exception to this immunity, this exception only applies if a plaintiff's "injury was caused by . . . negligent acts." *See* 42 Pa. Const. Stat. § 8542(a)(2); *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Cmwlth. 2014). For a negligence action, an injured party may recover against the City in limited circumstances, including where the negligent act of the city falls within one of eight enumerated categories of exceptions to immunity. 42 Pa. Const. Stat. § 8542(b). Those exceptions are: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody or control of animals. *Id*.

Here, all intentional tort claims alleged against the City are barred by the Tort Claims Act. *See McDonald-Witherspoon v. City of Phila.*, 2017 WL 3675408, at *10 (E.D. Pa. Aug. 25, 2017). Lee's negligence actions are also barred by the Tort Claims Act as they do not fall under any of the eight exceptions set forth in 42 Pa. Cons. Stat. § 8542(b).

B

Lee also brings claims for monetary relief under the Pennsylvania Constitution (Counts IV, XIII, XVII, XVIII). However, "[t]he prevailing view is that Pennsylvania

14

does not recognize a private right of action for damages in a suit alleging violation of the Pennsylvania Constitution." *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 678 (E.D. Pa. 2017), *aff'd*, 756 F. App'x 165 (3d Cir. 2018) (citing *Gary v. Braddock Cemetery*, 517 F.3d 195, 207 (3d Cir. 2008)). "No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) (citing *Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa. Commw. 2006)). While parties may not seek monetary damages for violations of the Pennsylvania Constitution, "equitable remedies are available." *Id*. Accordingly, to the extent Lee seeks claims for monetary relief under the Pennsylvania Constitution, such claims are dismissed with prejudice.

V

Under Federal Rule of Civil Procedure 15(a), courts may grant a plaintiff leave to amend his complaint "when justice so requires." *See Frasher v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)). Moreover, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Lee has requested leave to amend his Complaint and is free to do so on or before July 19, 2019.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.